# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:08cv216
### (3:04cr194)

|  |  |  |
|---|---|---|
| **VAN ANTHONY ROSE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon the following motions:

(1) petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1);

(2) the government's Motion for Summary Judgment (Doc. No. 10);

(3) petitioner's Motion to Stay and to Amend (Doc. No. 12);

(4) petitioner's Motion to Amend (Doc. No. 13);

(5) petitioner's Motion to Amend (Doc. No. 14);

(6) petitioner's Motion for Bond (Doc. No. 15);

(7) petitioner's Motion for Disposition Regarding 2255(Doc. No. 17); and

(8) petitioner's Motion for Disposition Regarding Bond (Doc. No. 18).

Having carefully considered the petition, the government's dispositive motion,

petitioner's lack of response, and petitioner's additional motions filed after briefing

closed on the Motion for Summary Judgment, the Court will deny the relief sought by petitioner and grant the relief sought by respondent.

## I.    BACKGROUND

### A.    Pretrial Proceedings

On July 28, 2004, a grand jury returned a true Bill of Indictment charging petitioner with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  (3:04cr194, Doc. No. 7).[1]  At his arraignment, the petitioner plead "not guilty" and requested a jury trial.  (Id., Doc. No. 8).  On June 24, 2005, the government filed a notice, pursuant to Federal Rule of Evidence 404(b), advising petitioner of its intention to present "evidence of an Assault with a Deadly Weapon on or about June 29, 2004."  (Id., Doc. No. 23).

### B.    Trial

On July 19, 2005, petitioner's jury trial commenced.  During the course of the trial, the Court gave the government permission to introduce its noticed Rule 404(b) evidence, including testimony about the June 2004 assault. (Id., Doc. No. 46 at 62-63, 69: Trial Transcript, Vol.  1 (hereinafter "Tr. T., Vol. 1")).  The parties also stipulated

---

[1] In his motions to amend, petitioner attempts to raise issues concerning the genuineness of the Bill of Indictment, including challenges to whether the Bill of Indictment was signed by the United States Attorney and by the Grand Jury foreperson, and whether it was filed.   The undersigned has closely reviewed the Bill of Indictment and determined that the instrument is true in form in that it does contain all required signatures and is stamped as filed by the Clerk of this Court July 28, 2004.  Petitioner's motions to amend, as well as his request for bond, on such basis are wholly meritless.  See (3:04cr194, Doc. No. 7).

that the petitioner had at least one prior felony conviction, and that the ammunition in question had traveled in interstate commerce. (Id., Doc. No. 47 at 237-39: Trial Transcript, Vol. 2 (hereinafter "Tr. T., Vol. 2")). The only question for the jury was whether petitioner actually possessed the ammunition in question. See (Id., Doc. No. 28).

On the issue of possession, the government presented testimony from five witnesses: a former girlfriend of the petitioner's who was the victim of the June 2004 shooting, Shamika Worth (hereinafter "Ms. Worth"); the mother of Ms. Worth, who witnessed the shooting; another former girlfriend of the petitioner's, Tyisha Robinson (hereinafter "Ms. Robinson"), who was at or around the scene of that shooting, and who was present when the police searched the petitioner's apartment and found the ammunition underlying the charge in the Bill of Indictment; and the two officers who investigated the shooting, arrested the petitioner, and secured the physical evidence linking petitioner to the ammunition.

Considered together, the witnesses' testimony and physical evidence tended to establish that on June 29, 2004, the petitioner and Ms. Robinson made harassing phone calls to Ms. Worth's home and attempted to instigate a fight between the two ladies. (Tr. T., Vol. 1, at 86,103). During the late night hours of June 29, 2004, the petitioner drove or was driven by Ms. Robinson in a stolen car to a parking lot near

the home of Ms. Worth. (Tr. T., Vol. 1, at 87-88, 123-24). When petitioner arrived, Ms. Worth, her mother, and infant daughter were on the front porch of her home. Petitioner then walked up, fired three shots at them, and fled. (Tr. T., Vol. 1, at 87-89). Following the shooting, the petitioner made threatening calls to Ms. Worth's home. (Tr. T., Vol. 1, at 92). Also during that time, Ms. Worth's brother searched the area from where the petitioner had fired the shots, found two shell casings, and gave them to his mother who, in turn, gave them to the investigating officers. (Tr. T., Vol. 1, at 93, 107).

The government's evidence also showed that one or two days following the shooting, the officers saw the petitioner standing next to the vehicle the victim had described to them. Upon learning the vehicle had been reported stolen, the officers initiated a traffic stop, and a search of the vehicle yielded a .25 caliber bullet in the pocket on the driver's side door. The bullet from the stolen car had the same manufacturer's marking on it as the .25 caliber casings retrieved from the scene of the shooting. (Tr. T., Vol. 1, at 166-73, 178-89).

The government's evidence further provided that after searching the car, the officers obtained and executed a search warrant at the petitioner's apartment and found .22, .25, .38, and .357 caliber ammunition, which are the subject of the Bill of Indictment. The government's evidence also tended to show that these .25 caliber

bullets bear the same manufacturer's markings as the ones retrieved from the scene of the shooting. The officers also found in their search of the apartment a spent .25 caliber shell casing, paperwork with the petitioner's name on it, and men's clothing in the bedroom, which Ms. Worth had described as belonging to the petitioner. (Tr. T., Vol. 1, at 189-211).

At trial, Ms. Robinson testified that while she and her children had sometimes spent the night at the petitioner's apartment, she did not own the ammunition that was found therein. (Tr. T., Vol. 1, at 129-36). On redirect examination, Ms. Robinson also testified that she occasionally had seen the petitioner go into the storage bins where some of the ammunition was found and that she regularly had seen ammunition in various locations in the apartment prior to the time that the search warrant was executed. (Tr. T, Vol.1, at 158-59).

The government also presented convincing evidence of petitioner's gang affiliation. Officer testimony[2] revealed that during jury selection, the petitioner stared down one of the officers and made a hand gesture that the officer associated with the "Latin Kings" gang; that the officer had seen gang-related tattoos on the petitioner's body; and that interviews with other persons had revealed that the petitioner was a member of the "Latin Kings." (Tr. T., Vol. 1, at 213-15). Further, the Court was

---

[2] This testimony was received by the Court outside the presence of the jury, after the jury had been excused at the end of the first day of trial. (Doc. No. 46 at 213).

advised that Ms. Worth and her mother had told the officer that the petitioner made hand gestures signaling that he planned to have someone "get them" and that Ms. Robinson had said that the petitioner made a gang-related hand gesture and blew kisses at her. The Court was further advised that the witnesses had all felt intimidated and scared by the petitioner's conduct. (Tr. T., Vol.1, at 215-16). The Court then noted its own observations of the petitioner staring at the civilian witnesses and making hand gestures while they testified. (Tr. T, Vol. 1, at 219-20). Accordingly, the Court admonished the petitioner to stop the inappropriate behavior and that any further misconduct would be dealt with by the Court. (Tr. T., Vol. 1, at 220).

At the close of the government's case, defense counsel requested a judgment of acquittal, which was denied. (Tr. T., Vol. 2, at 240). Defendant, thereafter, declined to put on a defense, but renewed his motion for dismissal. (Tr. T., Vol. 2, at 240). This motion was also denied. (Tr. T., Vol. 2, at 240-41). After hearing the parties' arguments and receiving instructions from the Court, including an instruction on the limited purpose and use of the government's Rule 404(b) evidence (Tr. T., Vol. 2, at 256-57), the jury deliberated for approximately 90 minutes and returned a guilty verdict. (Tr. T., Vol. 2, at 307, 310-11); (3:04cr194, Doc. No. 28).

## C.    Sentencing

On August 1, 2006, the Court held petitioner's sentencing hearing. Defense

counsel objected to the entire Pre-Sentence Report (hereinafter "PSR") as containing irrelevant and prejudicial information and to the four-level enhancement under Section 4B1.4(b)(3) of the United States Sentencing Guidelines, which was an enhancement for the petitioner's having possessed ammunition in connection with the June 29, 2004 shooting. Counsel argued that such should be excluded as being a violation of the rule announced in <u>United States v. Booker</u>, 543 U.S. 220 (2005). (3:04cr194, Doc. No. 42 at 4: Sentencing Transcript (hereinafter "S.T.")). The Court overruled the objection to the entire Report, but sustained the second objection and excluded the four-level enhancement. (S.T. at 6-7).

The Court concluded that the petitioner was, however, subject to a two-level obstruction of justice enhancement under Section 3C1.1 and to a four-level firearm enhancement under Section 2K2.1(b)(5) for having possessed the ammunition in connection with another felony. The Court further determined that he was properly deemed to be an Armed Career Criminal, that his Offense Level was 33, and that his Criminal History was Category VI, resulting in a corresponding sentencing range of 235 to 293 months imprisonment. (S.T. at 7, 15-16).

Defense counsel then asked the Court to sentence the petitioner at the bottom of that sentencing range in light of his age and the fact that his offense of conviction had not involved violence. (S.T. at 7-8). The petitioner then addressed the Court,

denying ownership of the ammunition despite the jury's finding and refusing to apologize for his conduct. (S.T. at 9). The petitioner asked the Court to consider his four children, his alleged retirement from crime, and his reported assistance to law enforcement officers. (S.T. at 9-10).

In response, the government reminded the Court of both the June 29, 2004, shooting incident and the petitioner's intimidating conduct during the trial, and requested an upward variance. (S.T. at 11-12).

Based on the arguments and materials presented, as well as the Court's own recollection of the evidence and the conduct of petitioner during the trial, the undersigned determined that a variance was warranted because of petitioner's "atrocious criminal history which involve[d] drug trafficking and violence;" his involvement with "many violent events" as evidenced by his ten gunshot wounds, which injuries had not deterred his "return to crime time and time and time and time again"; his use of the unlawfully possessed ammunition to shoot at a victim in the days leading up to his arrest in the instant case; and his use of gang-related gestures "to intimidate witnesses during the trial." (S.T. at 8, 14). Consequently, the Court varied upward to Offense Level 35 with a corresponding range of 292 to 365 months imprisonment, and imposed a 360-month term. (S.T. at 16); (3:04cr194, Doc. No. 35).

### D.    Appeal

The petitioner timely gave notice of his appeal to the Court of Appeals for the Fourth Circuit.  (3:04cr194, Doc. No. 32).  On appeal, petitioner, with the assistance of appointed appellate counsel,  argued that: (1) this Court had erred in denying his motion for a judgment of acquittal; (2) he was subjected to ineffective assistance of counsel by his trial attorney's mishandling of the cross-examination of Ms. Robinson; and (3) this Court erroneously calculated his increased sentenced based upon matters which were not presented to the jury.  United States v. Rose, 215 Fed. App'x 247, 248-49 (4th Cir. Jan. 30, 2007) (unpublished).  The Court of Appeals for the Fourth Circuit determined that the jury's verdict was supported by substantial evidence, his claim against trial counsel was not cognizable on direct appeal because there was no conclusive evidence of ineffectiveness on the face of the record, and his sentence was reasonable and in full compliance with the relevant legal precedent.  Id. at 248-49. The Court of Appeals affirmed the petitioner's conviction and sentence.  Id. at 249.

### E.    Collateral Review Under Section 2255

### 1.    The Petition

On May 8, 2008, the petitioner filed the instant Motion to Vacate contending first that his trial attorney was ineffective for having failed:  (1) to allow him to testify; (2) to object to the application of the "armed career criminal charge"; (3) to object to

the obstruction and firearm enhancements; (4) to object to the admissibility of the two spent shell casings; (5) to object to the "Bruton violation," which allegedly occurred during the testimony of Ms. Robinson; (6) to challenge the fruits of the searches of the stolen vehicle and his apartment and seek the suppression of the evidence secured during those searches; and (7) to make known "all the material misrepresentations and omissions in the warrant . . . ." (Doc. No. 1).[3]

Petitioner also contends that his appellate attorney was ineffective for having failed: (1) to file a *certiorari* petition for him; and (2) to raise a claims relating to trial counsel's alleged failures. (Id.).

## 2. The Government's Answer and Motion for Summary Judgment

On October 2, 2008, the government filed its Answer and Motion for Summary Judgment. (Doc. Nos. 9 & 10). After carefully reviewing all of the pleadings, on December 31, 2008, the Court entered an Order and Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of his obligation to respond to the government's Motion for Summary Judgment with his own affidavits or unsworn declarations, and giving him thirty days in which to file such response. (Doc. No. 11). The Roseboro Order and Notice further advised the petitioner that his

---

[3] The Court will also address a number of subcontentions and additional claims that are asserted in the *pro se* petition.

failure to respond could result in the Court's granting summary judgment for the government and "the dismissal of [his] Motion to Vacate with prejudice." (Id.). By the terms of that Order and Notice, the Court notified petitioner that his response was to be filed not later than January 30, 2009. On February 2, 2009, the Clerk of this Court noted on the Court's internal docket the passage of such deadline without any response. While petitioner has filed a number of motions after such deadline ran, more than a year has now passed with no response to the government's motion.[4]

## II. DISCUSSION

### A. Applicable Standard

Rule 12 of the Rules Governing Section 2255 Proceedings makes the Federal Rules of Civil Procedure applicable to Section 2255 proceedings, and further provides for application of the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with any statutory provisions or these rules . . . ."

In turn, the Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[4] The Court has reviewed the petitioner's out-of-time motions for any arguments responsive to the government's motion and can find none. For the reasons discussed below, such motions will be denied as they seek to add additional frivolous contentions or seek relief that is not available on this petition.

matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a gen ine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting

Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

* * *

The Court advised petitioner of his obligation of responding as provided in Roseboro, supra, and petitioner has not responded. For the reasons that follow, the government's motion will be allowed.

### B. Ineffective Assistance of Counsel

Review of the pleadings as well as the transcripts of the criminal proceedings reveals that petitioner's contention that his trial and appellate attorneys were ineffective is wholly without merit. It appears from the record, as well as the Court's own recollection, that petitioner was well represented by highly effective counsel at trial. Review of the decision of the Court of Appeals as well as the affidavit of appellate counsel reveals that petitioner also received effective assistance on appeal.

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In determining reasonableness, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

From the outset, it is apparent that petitioner's Motion to Vacate is subject to summary dismissal because he failed to file it under penalty of perjury as required under Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings. Further, it appears that four of petitioner's claims, to wit -- that (1) trial counsel failed to allow him to testify at trial; (2) trial counsel failed to object to his sentencing as an armed career criminal; (3) appellate counsel failed to seek *certiorari* review; and (4) trial counsel failed to challenge the government's Rule 404(b) evidence -- are also subject to summary dismissal because petitioner failed to support such contentions with a statement of facts or law as required under Rule 2(b) of the Rules Governing Section 2255 Proceedings. In addition to such procedural default, the Court will consider the merits of each of the petitioner's contentions.

### 1.    Assistance of Trial Counsel

#### a.    Advice as to Right to Testify

The government has filed trial counsel's affidavit, which unequivocally establishes that he advised petitioner of his right to testify. It makes clear that petitioner declined to testify after realizing that the harm which he would suffer during cross-examination about his criminal record outweighed any potential benefit from his testimony. <u>See</u> (Doc. Nos. 9 at 13-14, 9-2 at ¶ 1). The Court made inquiry of counsel in open court as to whether he would put on evidence. In defendant's

presence and without objection from defendant, he indicated the defense would not put on evidence. Thus, counsel was in no manner deficient in his performance, and no prejudice accrued to petitioner. Such contention is, therefore, without factual support or substantive merit. Petitioner cannot establish a deficiency or prejudice on this claim.

### b.     Challenging Armed Career Offender Status

Petitioner next contends that counsel was ineffective under Apprendi and Shepard, infra, by failing to object to his "Armed Career Criminal" designation at sentencing. Criminal convictions are exempt from the proof requirements imposed under Apprendi v. New Jersey, 530 U.S. 466 (2000).[5] Neither Apprendi nor its progeny, i.e., United States v. Shepard, 544 U.S. 13 (2005)[6] (applying Apprendi), provide any basis for counsel to oppose the Court's use of the petitioner's criminal history to calculate his sentence. Further, petitioner's undisputed criminal record includes proof of two separate drug trafficking convictions, and a burglary conviction). The record makes it clear that petitioner was properly sentenced as an

---

[5] Apprendi stands for the proposition that any factor other than a prior conviction, which increases the statutory maximum term, must be alleged in the indictment and either admitted by the defendant or proven to the jury beyond a reasonable doubt.

[6] Shepard applies Apprendi and holds that when faced with disputes concerning prior convictions, sentencing courts must limit their consideration to specific evidence, i.e., the charging document, plea agreement or other comparable record information, in determining whether an enhancement can be applied under the Armed Career Criminal Act.

Armed Career Criminal; thus, trial counsel was not deficient in his representation of petitioner on this issue, and petitioner cannot show prejudice.

### c.  Challenging Firearm and Obstruction Enhancements

Petitioner cannot establish a deficiency or prejudice from trial counsel's decision not to challenge the firearm and obstruction enhancements at sentencing because both enhancements were properly applied.  Nothing precluded this Court from considering the Rule 404(b) evidence to determine whether petitioner was subject to the firearm enhancement.  Further, this Court's first-hand observations of petitioner actually obstructing justice during a judicial proceeding through hand gestures was sufficient to support the obstruction enhancement. The Sentencing Guidelines expressly authorize the Court to increase by the offense level by two "[i]f the defendant willfully obstructed or impeded or attempted to obstruct or impede, the administration of justice during the ... prosecution or sentencing of the instant offense."  United States Sentencing Guidelines § 3C1.1.  Petitioner cannot establish a deficiency or prejudice on this claim.

Petitioner argues that it was deficient for trial counsel not to argue that such enhancement was prohibited by United States v. Booker, 54 U.S. 220 (2005). A district court does not violate a defendant's sixth amendment right to a jury trial, in violation of Booker, by enhancing a defendant's sentence under the advisory

Sentencing Guidelines based on facts found by the district court by a preponderance of the evidence, rather than by a jury beyond a reasonable doubt. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005). A sentencing court has a duty to make such findings in calculating the Guidelines range of imprisonment applicable to a particular defendant. Trial counsel could not have provided deficient performance in failing to object to these enhancements because the facts before the Court -- which included firsthand observation of the obstructive conduct -- more than supported the enhancements. The Court explained on the record that conduct involving intimidating witnesses during the trial warranted the enhancement.

As to the enhancement based on petitioner's possession of ammunition in connection with another felony offense, it is clear by a preponderance of the evidence that petitioner shot at his ex-girlfriend using ammunition that matched the type of ammunition found in petitioner's bedroom. See (S.T. at 14). Petitioner can show neither deficient performance nor prejudice with respect to these enhancements.

### d.    Objecting to Physical Evidence Presented

Petitioner also claims that trial counsel failed to challenge the admissibility of evidence concerning the shell casings, also described by petitioner as the "lost bullets."[7] This claim is without merit inasmuch as the record reflects that counsel

---

[7] The two .25 caliber shell casings recovered at the scene of the shooting were logged into the property room in the Charlotte-Mecklenburg Police Department under an assault

17

vigorously argued against the admission of that evidence. The Court ruled that while the shell casings had been destroyed, the documentary evidence concerning such shell casings could be admitted as proof of the petitioner's possession of the bullets and occupancy of the apartment where the other evidence was found. Further, based at least in part on trial counsel's arguments, the Court agreed to give a limiting instruction that the jury could only consider this evidence in terms of absence of mistake relative to the charged ammunition offense. (Tr. T.,Vol. 1., at 69). Petitioner cannot establish a deficiency or prejudice on this claim.

### e. Failure to Make a *Bruton* Challenge

Petitioner also argues that trial counsel was ineffective for failing to challenge his prosecution under <u>Bruton v. United States</u>, 391 U.S. 123 (1968). In a joint trial of defendants, <u>Bruton</u> prohibits the admission of a non-testifying co-defendant's statement when such statement fairly is understood to incriminate the defendant. Because petitioner had no co-defendants, <u>see</u> (3:04cr194, Doc. No. 7), this claim is misplaced.

### f. Questioning of Ms. Robinson

Petitioner also challenges under <u>Strickland</u> trial counsel's strategy of asking Ms.

---

with a deadly weapon charge brought against petitioner and disposed of in state court. The shell casings were destroyed pursuant to property room policy in January 2005. (Tr. T, Vol. 1, at 65-66, 181-183).

Robinson questions designed to implicate her as the owner of the ammunition. Review of the transcript, and the Court's own recollection of the testimony, reveals that such strategy was not so unwise as to constitute ineffective assistance, particularly since that strategy forced the witness to concede that she had lied to officers on one or more occasions. Thus, such line of questioning was well within the wide range of acceptable professional conduct.

Petitioner further claims that trial counsel should have questioned Ms. Robinson about her criminal history and the location of various pieces of the ammunition found in his apartment. An unsupported, conclusory allegation is insufficient to support petitioner's claim of ineffective assistance of counsel on this issue. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). An examination of the trial transcript shows that counsel did question Ms. Robinson about the location of ammunition in the apartment. (Tr. T., Vol. 1., at 161-62). Counsel did not, however, question this witness about her criminal history. The decision whether to ask a witness about her criminal history falls within an attorney's discretion regarding trial tactics. If this witness had an extensive criminal record, the jury could have considered the defendant's association with her as suggestive of his engaging in criminal activity. On the other hand, if the witness had no criminal record, this fact would have supported the credibility of her testimony. According to the petitioner, she had a "cocaine conviction." During cross

examination, counsel was successful as stated above in obtaining admissions from the witness that she had repeatedly lied to the investigating officers, which a reasonable attorney could have well considered to be a successful cross examination. The Court recognized the effectiveness of counsel's cross examination of this witness at the time of trial, and noted such during a sidebar, stating, "Mr. Brown, I think you have -- you've been very effective in your cross examination." (Tr. T., Vol. 1, at 155).

Petitioner offers no facts to establish the relevance of any of this information or how it would have benefitted him. There is no merit to this claim, as petitioner cannot establish a deficiency or prejudice in counsel's cross examination of Ms. Robinson.

### g. Failure to Object to Evidence Varying From the Crime Charged

Petitioner also contends that trial counsel was ineffective for failure to seek exclusion of evidence concerning the June 29, 2004, shooting at Ms. Worth's residence. Petitioner contends that this evidence constituted a "variance" on the crime charged and resulted in a miscarriage of justice.

The government properly noticed its intent to use such evidence, and this Court properly admitted evidence concerning such shooting under Rule 404(b). Evidence concerning the shooting on June 29, 2004, was properly admitted under Rule 404(b) as probative in determining absence of mistake in the illegal possession of

ammunition as charged in Count One of the Bill of Indictment. (Tr. T., Vol. 1, at 69, 91-92). Petitioner's trial counsel did object (Tr. T., Vol. 1., at 66-72), and such objections were overruled. The Court of Appeals for the Fourth Circuit addressed a nearly identical issue recently:

> Simmons also challenges the district court's decision to permit testimony regarding the shooting in order to prove Simmons's possession of ammunition, arguing that the evidence was inadmissible under Federal Rules of Evidence 404(b) and 403. We review evidentiary rulings of the district court for abuse of discretion. *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir.2007). We will not " 'vacate a conviction unless we find that the district court judge acted arbitrarily or irrationally' in admitting evidence ." *United States v. Benkahla*, 530 F.3d 300, 309 (4th Cir.2008) (*quoting United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir.1993)).

> Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Rule 404(b) inquiry, however, applies only to evidence of other acts that are "extrinsic to the one charged." *United States v. Chin*, 83 F.3d 83, 87 (4th Cir.1996). "[A]cts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id.* at 87-88. "Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'" *Siegel*, 536 F.3d at 316 (*quoting United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir.1994)).

> * * *

> Applying these standards, we have little difficulty concluding that the district court did not abuse its discretion in admitting the challenged evidence. First, evidence of the shooting satisfied Rule 404(b) because it was intrinsic to the crime charged-it was part of the same series of transactions as the offense and helped to tell the story of the crime. In addition, such testimony does not run afoul of Rule 403 because, as

intrinsic evidence, it was highly probative. The evidence that Simmons was seen with a gun immediately before a shooting occurred was damaging to Simmons's case, but that is not the standard under Rule 403 and such evidence was not unfairly prejudicial.

United States v. Simmons, 2010 WL 2123909, *7 (4th Cir. May 27, 2010).[8] In this case, the admissible evidence tended to show that the shell casings recovered from the shooting, although later destroyed, had the same manufacturer markings as the ammunition recovered from petitioner's residence three days later and, further, the testimony elicited tended to show that petitioner was the shooter. See (Tr. T., Vol. 1, at 87-89). In addition, such evidence satisfied Rule 404(b) because it was intrinsic to the crime charged in the Bill of Indictment, as it was part of the "same series of transactions as the offense and helped to tell the story of the crime." United States v. Simmons, 2010 WL 2123909 at *7. Petitioner cannot establish a deficiency or prejudice in counsel's performance, as all the evidence was properly admitted.

### h. Failure to Challenge the Searches

Petitioner contends that trial counsel was ineffective for failing to challenge the warrantless search of the stolen car found in his possession as well as the subsequent search of his apartment with a warrant. Petitioner contends that counsel was ineffective because he failed to raise fourth amendment challenges to "the fruits of the

---

[8]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

initial warrantless search of the vehicle and the Dundee [sic] apartment," and to the "material misrepresentations and omissions in the [search] warrant affidavit." Brief Annexed to Petition, at 11. Petitioner argues that "[i]t is especially prejudicial for an attorney to fail to file such a motion, where, as in this case, a successful motion would have been dispositive, requiring the dismissal of all charges." Id. at 13. Petitioner's claim that the search warrant was based on misrepresentations and omissions fails, as it is conclusory, and his challenge to the search of the stolen vehicle he was operating fails as a matter of law.

First, the evidence a trial established that petitioner was operating a stolen vehicle at the time he was stopped. (Tr. T., Vol. 1, at 184-85). Being in possession of a stolen vehicle at the time he was stopped, petitioner had no reasonable expectation of privacy in the stolen vehicle and, consequently, no standing to contest the warrantless search of the stolen vehicle. United States v. Hargrove, 647 F.2d 411, 413 (4th Cir. 1981).

Second, evidence discovered in the stolen vehicle led officers to seek and obtain a search warrant for petitioner's apartment. Thus, there was no arguable basis for challenging either search and petitioner cannot establish a deficiency or prejudice in counsel's performance.

Petitioner does not establish with this claim a deficiency or prejudice in

counsel's performance.

## 2. Appellate Counsel

Petitioner alleges that his appellate counsel provided ineffective assistance by (1) failing to raise all of trial counsel's errors on appeal, including failure to challenge the admission of Rule 404(b) evidence of uncharged offense conduct and petitioner's association with gangs, thus prejudicing his right to a fair trial; and (2) failing to file a petition for writ of *certiorari* pursuant to his request that counsel do so.

### a. Failure to Raise Trial Counsel's Errors on Direct Appeal

Appellate counsel is not required to assert all non-frivolous issues on appeal. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). The affidavit of appellate counsel submitted by respondent establishes that appellate counsel raised the three issues which petitioner specifically requested that she raise on appeal. See (Doc. No. 9-3, at ¶ 3: Affidavit of Camille M. Davidson, Esq. (hereinafter "Davidson Aff.")). Petitioner states that if appellate counsel had raised all of the arguments set forth in his motion, "the results of the proceedings would have been different," namely, that his "conviction and sentence would have been vacated." Brief Annexed to Petition, at 13.[9] Such statement is conclusory and is unsupported by either facts or the law. As shown above, however, the claims petitioner asserted against trial counsel are without

---

[9] Testimony concerning the petitioner's gang association was presented outside the presence of the jury.

merit and could not have afforded petitioner any appellate relief.  Petitioner cannot establish a deficiency or prejudice in appellate counsel's substantive performance.

### b.    Failure to File a Petition for Writ of *Certiorari*

Petitioner also contends that appellate counsel's performance was deficient in that counsel failed to file a petition for writ of *certiorari* in the United States Supreme Court pursuant to his alleged request.   In the case of an unsuccessful appellant represented by appointed counsel, the attorney's responsibilities are outlined in the *Plan of the United States Court of Appeals for the Fourth Circuit, In Implementation of the Criminal Justice Act* (hereinafter "Fourth Circuit CJA Plan"), which implements the Criminal Justice Act of 1984.  <u>See</u> 18 U.S.C. § 3006A.  The Fourth Circuit CJA Plan provides in pertinent part as follows:

> counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of *certiorari*.  If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant.

Fourth Circuit CJA Plan, § V, ¶ 2 .

Petitioner's argument is unsupported by any copies or reference to the correspondence required by the Fourth Circuit CJA Plan.  Contrary to petitioner's unsupported contention, the respondent has provided undisputed evidence that is antithetical to petitioner's claim.  Ms. Davidson avers that she fulfilled her obligation

of informing the petitioner in writing of the adverse decision of the Court of Appeals for the Fourth Circuit and of his right to seek review by way of a writ of *certiorari.* Davidson Aff., at ¶ 5. While appellate counsel received post-decision correspondence from petitioner, which she answered, none of petitioner's correspondence requested that she seek review by the Supreme Court. Davidson Aff., at ¶ 6. Appellate counsel fully complied with the Fourth Circuit CJA Plan and properly documented her correspondence with petitioner. Petitioner is entitled to no relief, as he cannot establish a deficiency or prejudice in appellate counsel's performance.

### C. Additional Motions to Stay, Amend, for Bond, and Disposition

The Court has also considered in conjunction with the petition and the government's Motion for Summary Judgment petitioner's Motion to Stay and to Amend (Doc. No. 12), Motion to Amend (Doc. No. 13), Motion to Amend (Doc. No. 14), Motion for Bond (Doc. No. 15), petitioner's Motion for Disposition Regarding 2255 (Doc. No. 17), and petitioner's Motion for Disposition Regarding Bond (Doc. No. 18). All of these motions were filed well after the time provided in the <u>Roseboro</u> Order and Notice had run and well after the Court had commenced its work on the petition. Such improperly filed motions, among other events, have delayed this Court in issuance of its decision. Putting aside the issue of timeliness, the Court has

carefully read each motion and will discuss each briefly below.[10]

### 1. Motion to Stay and to Amend

Petitioner's Motion to Stay and to Amend (Doc. No. 12), contains a request to stay and to amend, but it is unaccompanied by any substantive argument or proposed pleading and gives no basis for the proposed stay. Such motion will be denied.

### 2. Second Motion to Amend

Petitioner's Motion to Amend (Doc. No. 13), attempts to challenge the Bill of Indictment as deficient. As noted above, such contention is meritless, as the Grand Jury issued a true Bill of Indictment that is regular on its face in all regards. Such motion will be denied.

### 3. Third Motion to Amend

Petitioner's Motion to Amend (Doc. No. 14) again seeks amendment to challenge the sufficiency of the indictment and also to challenge the sufficiency of the underlying criminal complaint. It is well settled that courts have the discretion to dismiss an indictment on the basis of a defect in instituting the prosecution or a defect in the indictment or information when the defendant shows that he has been prejudiced by the irregularity. See Fed. R. Crim. P. 12(b)(3); United States v. Brewer,

---

[10] The Court notes that in the brief supporting the petition, petitioner frequently mentioned that he would "amend" or "supplement" his petition or brief in the future. Considering these motions to be those amendments or supplements, they add nothing to the substance of the petition.

1 F.3d 1430, 1433 (4th Cir.1993). Apparently, petitioner takes issue with being charged in the underlying criminal complaint with unlawful possession of a firearm, but being charged in the indictment with unlawful possession of ammunition. Assuming the petitioner is attempting to argue that such difference in the charges somehow rendered the subsequent Bill of Indictment defective, he has failed to allege how he was prejudiced by the alleged error. United States v. Williams, 2004 WL 67900, at **6 (4th Cir. 2004).[11] The Court notes that this type of frivolous Section 2255 challenge is of recent vintage:

> Similarly, Petitioner fails to show how he was prejudiced from counsel's failure to make a frivolous argument. He had ample notice of the charges, and the "variance" between the Criminal Complaint and the Indictment is immaterial. Without showing sufficient prejudice, Petitioner has failed to satisfy a requisite element of the *Strickland* test for an ineffective assistance of counsel claim.

Munez v. United States, 2010 WL 2925917, at *4 (D.N.J. July 21, 2010).[12] There simply is no obligation for the grand jury to indict a defendant on the original charge, and only the original charge, brought against a defendant by way of criminal complaint. Counsel is not ineffective for failing to mount a frivolous challenge.

---

[11] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[12] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Review of the pleadings in the petitioner's criminal case (3:04cr194) reveals that petitioner was properly haled into court on the criminal complaint, that he was properly given an initial appearance on such charging instruction, that he was promptly appointed counsel, and, eight days after such initial appearance, indicted. (Id., Doc. Nos. 2-7).  Petitioner was then properly arraigned on the charge contained in the Bill of Indictment.  (Id., Doc. No. 8).  Petitioner has not and cannot show how such "variance" prejudiced him.  Petitioner also attempts to assert additional claims based on facts that simply do not exist. As noted above, petitioner's proposed amendment concerning the lack of signatures or file stamp appearing on the indictment are without factual merit as a review of the indictment reveals.  (Id., Doc. No. 7.)  Petitioner's Third Motion to Amend will be denied.

**4.  Motion for Bond**

Petitioner's Motion for Bond (Doc. No. 15) asks this Court to release him from incarceration on a bond pending resolution of his Section 2255 petition.  As petitioner is entitled to no relief under Section 2255, this motion will be denied.

Petitioner's Motion for Disposition Regarding 2255 (Doc. No. 17) asks that the Court resolve his Section 2255 petition.  Such motion is now moot, as this Order resolves such petition.

Petitioner's Motion for Disposition Regarding Bond (Doc. No. 18) seeks

disposition of his Motion for Bond.  Such motion is now moot, as this Order resolves the Motion for Bond.

### 5. Conclusion as to additional motions

Having considered all of petitioner's untimely motions, the Court concludes that petitioner has provided no basis for the amendments, stay, or bond he proposes. Review of petitioner's proposed amendments reveals that they are not in conformity with the requirements of Rule 15(a), Federal Rules of Civil Procedure,[13] inasmuch as such amendments appear not to be made in good faith as they find absolutely no factual support or support in current case law.

Rule 15(a) of the Federal Rules of Civil Procedure  provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires."  In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court held that a liberal reading of the rule's direction for "free" allowance is mandated: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc."  Id.   In this case, however, amendment would be futile as petitioner's proposed amendments are patently without legal or factual merit.  Ward Elec. Serv., Inc. v. First

---

[13]  Applicable to Section 2255 actions in accordance with Rule 12, Rules Governing Section 2255 Proceedings.

Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987).

## III.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that

(1)    petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. No. 1) is **DENIED**;

(2)    respondent's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**, and Summary Judgment is entered in favor of respondent providing that the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. No. 1) is **DISMISSED** with prejudice;

(3)    petitioner's Motion to Stay and to Amend (Doc. No. 12) is **DENIED**;

(4)    petitioner's Motion to Amend (Doc. No. 13) is **DENIED**;

(5)    petitioner's Motion to Amend (Doc. No. 14) is **DENIED**;

(6)    petitioner's Motion for Bond (Doc. No. 15) is **DENIED**;

(7)    petitioner's Motion for Disposition Regarding 2255 (Doc. No. 17) is **DENIED** as moot;

(8)    petitioner's Motion for Disposition Regarding Bond (Doc. No. 18) is **DENIED** as moot; and

(9)    pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED.**

Signed: September 26, 2010

Robert J. Conrad, Jr.
Chief United States District Judge